17  597|
82  453

## D. Messner v. William J. Hutchins.

Where the ground of attachment is that the defendant secretes himself, so that the ordinary process of law cannot be served on him, it is not necessary to add that the plaintiff will thereby probably lose his debt.

It would seem that the objection that the person who made the affidavit, or executed the bond, for attachment, as the agent of the plaintiff, had no authority from the plaintiff to do so, must be taken by plea in abatement of the writ, and not by motion to quash.

See this case as to the return of levy of an attachment.

Where the jury came into Court with a verdict "for the plaintiff, allowing the credits, with interest on the balance," written on one of the papers of the cause and signed by the foreman ; which verdict the Court refused to receive ; whereupon the jury retired and afterwards returned a verdict for the plaintiff for a sum certain, "principal and interest," but which was considerably less than the principal and interest of plaintiffs' claim, after allowing the credits ; and the verdict was received, the jury discharged, and judgment entered ; it was held that the judgment could not be amended, on motion, by reference to the first verdict which the jury proposed to render.

Appeal from Washington. Tried below before the Hon. R. E. B. Baylor.

Suit by appellee against appellant on three promissory notes for $3,919 39 each, with interest from date ; sundry credits allowed ; among others, an account current between the parties, in which interest was computed on the items on both sides, with a balance in favor of defendant of $1240 38. Prayer for attachment. Affidavit that affiant is the agent of plaintiff, that the facts set forth in the petition are true, that the defendant is justly indebted to plaintiff in the sum of $9,405 62, that said defendant secretes himself so that the ordinary process of law cannot be served on him, that this attachment is not sued out for the purpose of injuring said defendant; sworn and subscribed by Munter Miller. Bond for attach-

ment, signed by W. A. Higgins as attorney in fact for the plaintiff, and three sureties. The Sheriff's return of the attachment was as follows :

Executed the within attachment, this 17th day of February, 1855, by going to the store-house of D. Messner, in the town of Brenham, and declaring, in the presence of Robert Armstead and John Morris, that I attached the storehouse and lot, together with all the goods, wares and merchandize in said store-house contained ; said attachment was also levied on said store lot, being number 23, on the public square in said town, and on lot number 31, immediately back of lot number 23 ; also on lot number 9, all in said town of Brenham ; also on one eight acre lot near the Methodist Church in said town, and the same deeded to said Messner by Jesse Ferrell and John H. Day. I further executed this attachment by declaring in the presence of Louis Hauntz, that I attached a negro man named Squire, which negro man was on the same day replevied out of my possession by Mrs. Messner ; M. C. F. Barber, John H. Day and J. H. Norton, going her security, which said bond is herewith returned.

The remainder of the personal property I took into my possession and kept until it was delivered to James H. Wilkins, by order of Court.

(Signed) Jas. M. Dallas, Sheriff, W. C., per John Y. Young, Deputy.

There was an agreement in the record, signed by the attorneys of the parties, as follows :

We agree that on the trial of this cause, W. A. Higgins produced a good and sufficient power of attorney from W. J. Hutchins to him to sign his name to the bond. We also waive the necessity of copying the inventory of the goods, and agree that the following return, made by the Sheriff may be substituted for the inventory :

After levying the attachment, issued in the foregoing cases, on the goods, wares and merchandize in the store-house of D.

Messner, I proceeded to take an inventory of the same, which is contained in the foregoing sixty-four pages of this book, amounting in all to the sum of eighteen thousand four hundred and two dollars and 90 cents, which is hereby returned into Court, as a part of the return of the levy in said writs of attachment.

There was a plea of abatement under oath to the writ of attachment, alleging that neither Miller nor Higgins was the agent of the plaintiffs; but there did not appear to have been any disposition made thereof, unless it was submitted to the jury with the general issue, and included in the general verdict for the plaintiff.

Answer of general denial and plea of reconvention for unlawfully suing out the attachment.

Motion by the defendant to quash the attachment on the following grounds :

1st. Because the same was issued without sufficient bond and affidavit, and the said Munter Miller had no authority to make said oath.

2nd. Because W. A. Higgins had no authority to sign the plaintiff's name to said bond, and no authority is shown.

3rd. The petition is not sworn to by plaintiff as is required by Statute.

4th. The plaintiff has not made affidavit, as required by law, to the amount due, and has charged interest upon an open account, and stated the same to be due, when it appears from the papers filed, that a different amount is due.

5th. The amount of the debt is not distinctly and clearly stated, and it appears from papers filed that the defendant is entitled to credits, which have not been allowed.

6th. The attachment was not levied as required by law, in the presence of two or more credible persons of the neighborhood, and beside the said pretended levy was not made by a lawful officer, and the same was not made by the Sheriff of said county or a lawful deputy, &c.

The Court overruled the motion to quash, and defendant excepted, but there was no bill of exceptions stating the facts before the Court on said motion.

. April 16th, usual entry of trial ; verdict, "We, the jury, find for plaintiff $9,366 56, principal and interest. John R. Bropley, foreman ;" and judgment accordingly. Same day motion to amend the judgment as follows :

In this cause the plaintiff alleges that the jury, in their second verdict rendered int his cause at the present Term of the Court, made a miscalculation of the interest, amounting to eleven hundred and eleven dollars and fifty-nine cents ; that it is evident, from the first verdict and other papers in the cause, that they intended to find the full amount of the notes, and interest, allowing only the credits set forth in plaintiff's peti-tion ; that in calculating the interest the other mistake was made. He therefore moves the Court to correct said judgment, and amend the same according to the truth and justice of the case.

April 17th, motion by defendant for a new trial on the ground that the Court erred in refusing to submit the issue to the jury as a special issue upon the plea in abatement, (as said before, no bill of exception to this point,) and because the verdict was contrary to the evidence. Overruled, April 25th.

April 24th, entry as follows :

This day came the parties by their attorneys, and the plaintiff's motion coming on to be heard to correct the judgment in this cause, rendered on a former day of the Term of the Court, and to amend the same according to the truth and justice of the case ; and it appearing to the satisfaction of the Court that the jury in this cause returned into Court the following verdict : "We the jury find for the plaintiff $9,366 56 principal and interest, John R. Bropley, foreman," in which said verdict there is a miscalculation of interest of eleven hundred and two dollars and ninety-one cents. It is therefore consid-

ered by the Court that said judgment rendered in said Court, at a former day of this Term of the Court, be so corrected as to read, " that the said plaintiff have and recover of the said defendant, the sum of ten thousand four hundred and sixty-nine dollars and forty-seven cents," instead of said sum of nine thousand three hundred and sixty-six dollars and fifty-six cents, with interest on said sum of ten thousand four hundred and sixty-nine dollars and forty-seven cents at the rate of ten per cent. per annum, together with his costs, in this behalf expended, and that he have his execution for the amount of said judgment so corrected, as well as for his costs aforesaid, to which opinion of the Court permitting said judgment to be corrected the defendant excepts, and gives notice of an appeal to the Supreme Court, which is granted in the terms of the law.

The showing upon which this order was made was as follows :

After the jury had retired and returned into Court and presented the following verdict, " We the jury find for the plaintiff, allowing the credits, with interest on the balance due," the defendant's counsel remarked, " Let the jury make their own verdict," and objected to the calculation being made in Court by plaintiff's counsel ; the Court directed the jury to retire and make their calculations, and, after being out some six hours, they returned into Court the following verdict, " We the jury find for the plaintiff $9,366 56, principal and interest," which verdict was received by the Court. It has been the uniform practice of this Court to permit a verdict to be put in form at the bar when the jury returns it into Court, in their presence, and with their assent.

Appellant assigned the following errors :

The Court erred in overruling the motion of defendant to quash the attachment.

2nd. The finding of the jury was contrary to law and evidence.

3d. The Court erred in sustaining the motion of plaintiff to amend the judgment.

4th. The Court erred in overruling defendant's motion for a new trial and in denying the defendant the right of trial by jury.

*Lewis & Barber*, and *Giddings & Giddings*, for appellant.

*Shepard* and *Higgins*, for appellee.

WHEELER, J.  The affidavit is in literal conformity to the Statute.  It is only when the defendant is about to remove his property beyond the State, that the plaintiff is required to make oath, that he will thereby probably lose his debt. (Hart. Dig. Art. 25.)  There is nothing in the objection to the sufficiency of the affidavit made to obtain the attach-ment.

Nor is the objection to the bond well taken.  It was not necessary that the attorney should produce his power of attorney upon the motion to quash.  It was sufficient that it was produced upon the trial.  In Drake on Attachments, it is said, " Where the bond purports to be the act of the plaintiff, by an "attorney in fact, the authority of the attorney will be presumed, " at least on the hearing of a motion to quash the writ on ac- " count of the insufficiency of the bond.  If it is intended to ques- " tion the authority, it must be done by a plea to that effect. " For the agent's authority is a matter of evidence *aliunde*, and " forms no part of the bond ; and on a motion to quash or dis- " miss, the Court will not inquire into the fact of agency, but " will presume it.  The utmost extent to which the Court would " go in such a case, would be to rule the party to produce the " power of attorney under which he acted, within a reasonable " time."  (Drake on Attachments, Sec. 135 ; 9 Porter, 320 ; 2 Ala. 326.)

To the objection that the return of the Sheriff did not sufficiently identify the goods levied on by virtue of the attachment, it might be a sufficient answer, that no objection was taken to the levy or return, in the Court below. The validity of the levy was not questioned in the motion to quash the attachment, [Mr. Justice Wheeler probably referred to the plea in abatement.—Reps.] nor in any other manner, nor is it brought in question by the assignment of errors. But had the objection now urged in argument been taken, it could not have prevailed. The return endorsed on the writ sufficiently describes and identifies all the property levied on except the goods in the store; and the want of certainty in that particular is supplied by the agreement, showing that the officer did make and file an inventory of the goods as a part of his return. It was not necessary, nor, I presume practiacble, to indorse upon the writ the entire return. It is sufficient that the offi cer made a return, to which there was no objection, showing a valid levy. There is no error in the judgment of the Court overruling the motion to quash the attachment.

The propriety of amending the judgment is more questionable. Article 786 of the Digest is relied on as authorizing the amendment. But the condition which it prescribes, as the basis of the exercise of the power, is where " there shall be " among the records of the proceedings in the suit, in which " such judgment or decree shall be rendered, any verdict or in- " strument of writing, whereby such judgment or decree may " safely be amended." The verdict which the jury first proposed to render must have been the basis of the amendment which was made. But that verdict was not received. The jury were made to retire to consider further of their verdict, and ultimately returned a different verdict. Hence what they first proposed did not become and was not their verdict. It was a mere proposal or offer to return a verdict, which the Court would not receive, and not being received and recorded as the verdict of the jury, it had no validity, force or effect as a ver-

dict or proceeding in the cause. It was not "any verdict or instrument of writing" "among the records of the proceedings in the suit ;" and could no more constitute the basis of a judgment, or an amendment of the judgment, under the Statute, than any other matter of fact outside of the record. Yet the amendment was, in effect, the rendition of judgment upon it. The verdict of the jury, which had been received and recorded, was set aside and disregarded in the rendition of judgment, upon the application to amend. This was upon the assumed ground that the jury had made a miscalculation of interest in the rendition of their verdict. But this the Court could not know ; for the verdict did not inform the Court by what means the jury arrived at their conclusion. It did not necessarily follow, that because, six hours before, the jury had proposed a certain verdict, they were still of the same mind, and intended to return one substantially the same as that first proposed. They may have changed their minds, and concluded to find against the plaintiff as to a part of his demand. Until their verdict was returned and received by the Court, they were at liberty to change it. If the verdict had contained the basis of the calculation made by the jury, or had afforded data, by which their intention could be certainly ascertained, the mistake, if any, in their calculation, might have been corrected, and the amendment would have been proper. But having returned a verdict for the plaintiff for a sum certain, after it had been received and recorded, the Court had no power over it to change it. If the finding was erroneous, and contrary to the evidence, the only way to correct it was by a *venire de novo*, or a new trial. The Court had not the power to change its substance, so as to make it conform to what might be supposed to be the intention of the jury ; for that would be to assume their exclusive prerogative, and find for them the verdict which they ought to have found. The verdict of the jury must be the sole exponent of their intention.

When the jury proposed to return a verdict, which only re-

quired the calculation of interest to render it sufficiently certain, the Court might very properly have directed the clerk or the attorney to make the calculation for the jury, and if assented to by them, it might have been received as their verdict. But when the jury were sent back to consider further of their verdict, they were free to reconsider and change it as they saw proper. What they had done, or had proposed to do, was not binding upon them, and was of no force or effect whatever. The verdict which was finally returned and recorded, could not be modified or changed by reference to it. And to render judgment for a sum greater than the jury, by their verdict, found to be due, was to disregard their finding, and, in effect, to give judgment without a verdict. The judgment rendered upon the application to amend, must therefore be reversed and set aside, and the judgment first rendered upon the verdict, and which conformed to it, reinstated ; unless the appellee shall see proper to confess errors, in order that the case may be remanded for a new trial.