### J. P. Matthews *v.* R. W. Millsaps et al.

1. Contribution. *Demanded by sureties. Nature of the right. Sheriff's bond.*
The sureties on a sheriff's bond, having paid off a liability thereon, have no right to call upon a person for contribution who has never been in any manner legally liable upon the bond to the obligee thereof, although he may have intended to become a surety and have made an ineffectual attempt to do so.

2. Same. *What gives rise to the right. What necessary thereto.*
To give rise to the right of contribution, it is necessary that the party asserting it and he against whom it is asserted shall have been bound in the same character and in the same attitude to a common obligee, for a common liability, which has been discharged by the former in excess of his share of the common burden as between him and his co-obligor. It is not necessary that such common liability shall have been assumed at the same time nor by the same instrument, nor that there should be any privity between the obligors. It is the sameness or identity of character of the several obligations of the co-obligors to the obligee which is the essential characteristic of the liability out of which the right of contribution arises.

3. Same. *Sureties on bond. Attempted substitution. Effect. Estoppel.*
L. and M. were sureties on a sheriff's bond. L. instituted a proceeding, under sect. 316 of the Code of 1871, to obtain a release from the bond. He and the sheriff having appeared before the Board of Supervisors, the sheriff tendered P. as a surety to take the place of L. It was then arranged that the name of L. should be erased from the bond and that of P. affixed thereto. L. did not further prosecute the statutory proceeding for his release, but all parties accepted the erasure of L.'s name and the affixing of P.'s signature as a substitution of the latter as surety in place of the former. This court decided that the attempted substitution neither released L. nor bound P. as to the obligee in the bond. A liability on the bond was paid off by the sureties L. and M., who thereupon filed a bill against P., seeking to make him contribute as a co-surety. It was contended for the complainants that P. agreed to assume the relation of a surety, and thereby induced L. to take no further legal steps to be released, and that as to the other sureties P. is estopped to deny his suretyship, though not legally bound to the obligee in the bond. *Held,* that P. did not intend to become a co-surety with L., but to be substituted in his place, and if he be estopped, as against L., to deny the validity of his signature, such estoppel would make him an indemnitor for L., but not a co-surety with him.

APPEAL from the Chancery Court of Lincoln County.

Hon. H. S. VAN EATON, Chancellor.

The case is stated in the opinion of the court.

W. P. & J. B. Harris, for the appellant.

In the case of The State v. Matthews, 57 Miss. 7, this court said, as the result of an ignorant blunder by all concerned in an abortive attempt to comply with sect. 316 of the Code of 1871: "It follows from these views that Matthews was not bound to the State on this bond." The theory of the opinion is, that when the sheriff's bond was executed and accepted it was not a thing to be passed from hand to hand as a mere private paper, as a note or bond, the subject of action by the parties to it, by new and supplemental contracts. No man, it matters not by whom solicited nor by what motives influenced, could make himself a surety on it; nor could he acquire the right of a surety to pay the bond and obtain contribution. If he could not become bound as a party to a common liability or burden he could not be subject to the claims of those who had, without his procurement or solicitation, become legally bound.

Matthews' intention to become a surety on the sheriff's bond, if effectual to make him such, made him a co-obligor or an obligor, and if not effectual to make him an obligor it did not make him a surety. It is declared in all the text-books and the cases, touching the foundation of the obligation to contribute, that it arises from a common obligation to the same party for the same thing. This, of course, includes the idea: for the same principal. These two elements are essential to the right. Burge on Surety. 384 ; De Col. on Prin. & Surety, 339. The surety seeking contribution stands in the shoes of the creditor. 2 Brocken. 159 ; Lowndes v. Pinckney, 1 Rich. Eq. 179.

It may be conceded that the co-suretyship may exist though the obligations may be contained in different instruments and incurred at different times ; but the party sought to be charged

must be legally bound at some time to the creditor, or in one or the other of the instruments.

The bill here does not set up any agreement between Matthews and any surety. No one was induced by him to sign the bond. That he signed at the request of Moore, the sheriff, is alleged, and that is true; but the court has decided that such signing did not make him a party to the bond. In deciding that Matthews was not bound by the bond, this court has in effect decided that he was not a surety. He could not be a party to the bond in any other character.

Matthews could not have become a co-surety of complainants, for he would not have been liable for the past acts of the sheriff, and the complainants would not have been bound for his future acts. No intention can be imputed to Matthews except an intention to do what the law required. He could not become a surety by substitution.

It is useless to discuss the question of the intention with which a party goes on a sheriff's bond. He can only be a party to it as surety. Nor is it necessary to determine whether he intended to become a co-surety, because if he becomes a surety he is a co-surety.

It is alleged in the bill that Matthews' purpose was to continue Moore in office, and that his signing the bond had the effect to continue him in office. This, in view of what occurred, is but to hazard a conjecture. He seems to have had no difficulty in giving bond. The object of the averment is to suggest a consideration for Matthews' signature. If that was a consideration, it did not move from the sureties : it could only form the basis of an obligation to the State ; but that consideration, though it was in view when the State sought to charge Matthews, was not held to create any obligation to the State.

*R. H. Thompson,* for the appellees.

It is said that Matthews is not liable to the obligee in the bond, and, therefore, cannot be called upon by a surety for contribution. Neither is Bennett or Hoskins (original sureties

on the bond) so liable.  When Millsaps and Lewenthall paid and satisfied the judgment, the other sureties, who are admittedly liable to contribution, at once ceased to be liable to the State or county.  Instead of liability to the payee being a test of liability to contribution, the reverse is the case.  If a surety is yet liable to the payee he cannot be made to contribute.  *Magee* v. *Leggett*, 48 Miss. 139, and authorities cited.

Matthews' undertaking in signing the bond was collateral to the original obligation, and must be construed as either a contract of guaranty, indorsement, or suretyship, according to the consideration, circumstances, and intentions.  *Monson* v. *Drakeley*, 40 Conn. 552 ; s. c. 16 Am. Rep. 74 ; 2 Pars. on Notes & Bills, 123 ; *Clapp* v. *Rice*, 13 Gray, 403 ; *Hullum* v. *State Bank*, 18 Ala. 805 ; *Camp* v. *Simmons*, 62 Ga. 73 ; 20 Ala. 596 ; *Rey* v. *Simpson*, 22 How. 341, 349 ; *Tenney* v. *Prince*, 4 Pick. 385 ; *Miller* v. *Gaston*, 2 Hill, 191 ; Story on Prom. Notes, sects. 474, 479 ; 13 Smed. & M. 617 ; 5 Smed. & M. 627 ; *Partridge* v. *Colby*, 19 Barb. 248 ; *McNiel* v. *Sanford*, 3 B. Mon. 11.

The right of contribution does not depend on the relation of joint makers, but entirely on that of co-suretyship.  A party may be so situated as not to be liable to the holder as a maker, and therefore not in a condition to seek contribution from other parties who are sureties, and still retain to them such a relation that, in the event of payment by one of them, he will be liable to contribution.  *Monson* v. *Drakeley*, 40 Conn. 552 ; s. c. 16 Am. Rep. 74.

Matthews was either a guarantor or a surety.  He was not a guarantor.  *Cox* v. *Weed Sewing-Machine Co.*, 57 Miss. 350.  He did not intend to be a guarantor.  *Camp* v. *Simmons*, 62 Ga. 85.  Appellant signed the bond for and at the request of the principal, Moore, and for his sole benefit.  He supposed it would continue Moore in office, as in fact it did, and was thereby beneficial to him.  Under these circumstances Matthews became a co-surety of complainants.  *Monson* v. *Drakeley*, 40 Conn. 552 ; s. c. Am. Rep. 74.  The inten-

tion, as charged in the bill, was to become a co-surety. The fact that he signed the same paper that Lewenthall and Millsaps had signed, and that he signed in the same way, without restriction or limitation on his signature, implies that he intended to be bound as they were bound. *Monson* v. *Drakeley, supra*.

Co-sureties may be bound by undertakings of different dates and by different instruments. Smith's Merc. Law, 558; Fell on Guar. & Surety, 305 *et seq.;* De Col. on Prin. & Surety, 336–344; 2 Story on Con., sect. 885 *et seq.;* Brandt on Surety., sect. 221 *et seq.;* 1 Story's Eq. Jur., sect. 495, and note; Burge on Surety. 383; *Craig* v. *Ankeney,* 4 Gill, 225; *Harris* v. *Ferguson,* 2 Bailey, 397.

Now, if, as the authorities all teach, persons may become co-sureties by signing different instruments, at different times and for different considerations, why may they not do so by signing the same instrument?

Chalmers, C. J., delivered the opinion of the court.

John D. Moore, sheriff of Lincoln County, executed his official bond as such, with Millsaps, Hoskins, Lewenthall, and Bennett as sureties. Thereafter, Lewenthall and Bennett applied to the Board of Supervisors of the county to be released from said suretyship, in accordance with the provisions of sect. 316 of the Code of 1871, and Moore, having notice of said application, appeared before the board, accompanied by J. P. Matthews, and by the consent of the board, and in their presence, Matthews affixed his name to the bond, and thereupon the names of Lewenthall and Bennett were effaced from it by lines of red ink traced over them. All parties acquiesced in and accepted this as a substitution of Matthews as surety on the bond in lieu of Lewenthall and Bennett. The sheriff having thereafter made default, and suit having been instituted on the bond, it was by this court decided that the attempted substitution of sureties failed of its intended effect in consequence of non-compliance with the statute regulating the manner of

obtaining release by sureties on official bonds, and that Lewenthall and Bennett were not released by the erasure of their names from the bond, nor Matthews bound by the affixing of his.  *The State* v. *Matthews*, 57 Miss. 1.

After this decision by us the suit progressed in the lower court to final judgment against all the sureties, including Lewenthall and Bennett, but not including Matthews, as to whom the action was dismissed.   The judgment rendered has been paid by Millsaps and Lewenthall, who now bring this bill against their co-sureties for contribution, and to it they have made Matthews a party defendant.   The latter demurs, upon the ground that, not being legally a surety on the bond, and not bound to the State by his signature to it, he cannot be called upon for contribution.   His demurrer being overruled, he appeals, and the rightfulness of the action on the demurrer is the only question before us.

The bill seeks to impose upon Matthews an obligation to contribute, upon two grounds : First, that it is not essential that he should be a surety to the State for the sheriff's default, or legally liable therefor, if in fact he had agreed to assume the relation of surety so far as the other sureties were concerned ; and, second, that as to such other sureties he is estopped to deny that such was his character.

We cannot agree that there can be any right among sureties to call for contribution upon one who is in no manner liable to the creditor, though the Supreme Court of Connecticut seems to have so held in the case of *Monson* v. *Drakeley*, 40 Conn. 552.   We say, seems to have so held, because the Connecticut court do not explicitly declare whether the party held liable for contribution in that case was or was not originally bound to the creditor for the common debt.   If he was not, we can perceive no valid ground upon which he can be held liable for contribution.

The duty of contribution, on the one hand, and the right to demand it, on the other, spring out of a common burden resting upon two or more persons occupying towards the

party who has the right to enforce it a like position. It need not exist by virtue of the same instrument, nor is it essential that the party first bound shall have either privity with or knowledge of the liability of the other, but it is essential that the common liability shall exist, and that it shall be of like character; that is to say, the parties must occupy towards the creditor exactly the same attitude.

It is not sufficient that they are both bound for the debt, if they occupy different attitudes towards it, and are bound in different degrees and by independent relations. Thus, the right of contribution does not exist between successive indorsers, nor in favor of or against a guarantor at the suit of other parties bound on the same contract. The party who calls for contribution must show that the person upon whom he makes the demand was not only bound for the debt which he has paid off, but also stood towards it in exactly the same legal relation as himself. Certainly, then, it must be an all-sufficient answer if the party called upon can respond that he never was legally bound in any manner whatever.

In the case at bar, Matthews came under no liability to the obligee of the bond, — the State, — and it is quite apparent that he never even intended nor proposed to become a co-surety with complainant Lewenthall. The vain attempt made by him was not to become a co-surety with Lewenthall, but to be substituted for him, and thereby to release him altogether. Whatever obligation, therefore, he may be under to Lewenthall, he certainly is not a co-surety or coöbligor with him, and never proposed to be. If he had succeeded in accomplishing what was attempted, he would not have been bound in the same degree or manner as Lewenthall, but would have stood in a wholly different attitude. It is manifest, therefore, that he cannot be called on for contribution by Lewenthall. It is equally apparent that Millsaps is not entitled to demand contribution of him; because, as he was not bound to the State, he was never a co-surety with Millsaps, nor occupied any other legal relation to him whatever.

The result is the same, so far as this suit is concerned, upon the doctrine of estoppel.  If Lewenthall is entitled to estop Matthews from denying the validity of his signature because by such signature he (Lewenthall) was induced to forbear a further prosecution of his proceedings before the Board of Supervisors, and thereby failed to obtain the release which otherwise he must have obtained, the result must be that he is entitled to hold him as a substituted surety or indemnitor for himself, but certainly not as a co-surety.

If the scheme attempted had succeeded, Lewenthall would have ceased to be a surety, and Matthews would have become one.  If, therefore, Lewenthall is entitled to hold Matthews to this attitude, his remedy is not by a bill in chancery for contribution, but by a common-law action for money paid to his use; and this will embrace, not a proportionate part, but all the money paid by the former.  As to the legal result of such a suit we express no opinion.

As to Millsaps, there is no element of estoppel in the case.  He was no party to the proceedings for a substitution of sureties.  He still has exactly the associates with whom he embarked.  The defacement of the names of two of them (Lewenthall and Bennett) and the affixing of Matthews' name in their stead was an idle thing to him, and in no manner affected his rights.  By it he neither lost the right to call on the old sureties, nor acquired the right to call on the supposed new one.  He stands exactly where he did originally, and being in no respect damnified by the proceedings before the supervisors, cannot invoke the doctrine of estoppel by reason of them.

Decree reversed, demurrer sustained, and bill dismissed as to Matthews, without prejudice as to any legal rights of Lewenthall and Bennett against him.